IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAQUANA H., O/B/O D.H., JR.,

             Plaintiff,

      v.                             Civil Action No.
                                     5:19-CV-1124 (DEP)

COMMISSIONER OF SOCIAL
 SECURITY,

             Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP        MELISSA PALMER, ESQ.
300 South State Street
Syracuse, NY 13202

FOR DEFENDANT

HON. ANTOINETTE L. BACON    HUGH D. RAPPAPORT, ESQ.
Acting United States Attorney    Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral

argument was heard in connection with those motions on November 22,

2020, during a telephone conference conducted on the record. At the

close of argument, I issued a bench decision in which, after applying the

requisite deferential review standard, I found that the Commissioner's

determination resulted from the application of proper legal principles and is

supported by substantial evidence, providing further detail regarding my

reasoning and addressing the specific issues raised by the plaintiff in this

appeal.

After due deliberation, and based upon the court's oral bench

decision, which has been transcribed, is attached to this order, and is

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

GRANTED.

2)     The Commissioner's determination that the plaintiff's son was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     November 16, 2020
           Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SHAQUANA H., O/B/O D.H., JR.,

                                        Plaintiff,

-v-                             5:19-CV-1124

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
-----------------------------------------------------x

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
November 5, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

     OLINSKY LAW GROUP
     300 South State Street
     Suite 420
     Syracuse, New York 13202
     BY:  **MELISSA A. PALMER, ESQ.**

For the Defendant:
(Appearance by telephone)

     SOCIAL SECURITY ADMINISTRATION
     J.F.K. Federal Building, Room 625
     15 New Sudbury Street
     Boston, Massachusetts 02203
     BY:  **HUGH RAPPAPORT, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all parties present by telephone.

2    Time noted:  1:23 p.m.)

3          THE COURT:  Let me begin by thanking you both for

4    excellent presentations.  I found this to be a fascinating case

5    and somewhat out of the ordinary.

6          Plaintiff has commenced this proceeding on behalf of

7    her infant -- I shouldn't say infant -- child/son to challenge

8    an adverse determination by the Commissioner of Social Security

9    finding at the relevant times that her son was not disabled and,

10   therefore, ineligible for the Supplemental Security Income

11   benefits sought.  The challenge is brought pursuant to 42,

12   United States Code, Sections 405(g) and 1383(c)(3).

13         The background is fairly easily stated and is as

14   follows:  The plaintiff's son was born in August of 2007.  He is

15   currently 13 years of age.  He lives in Syracuse, New York in a

16   house with his mother who is single.  There is a father who is

17   somewhat involved in the son's upbringing.  Plaintiff's son

18   attends Delaware Academy in Syracuse, New York.  He is in

19   special education classes for all subjects in a 12-to-1-to-1

20   ratio setting.  The plaintiff's son finished fifth grade in June

21   of 2008.  His fifth grade teacher was Brian Kerwin.  Brian

22   Kerwin has submitted a questionnaire response that is part of

23   the record in this case and we'll discuss that in a moment.

24         Plaintiff is classified in his Individualized

25   Educational Plan as learning disabled in reading and math.

SHAQUANA H., O/B/O D.H., JR. v. SOCIAL SECURITY                    3

1   That's at page 219.  There is evidence of some past disciplinary

2   issues, although as we'll discuss in a moment, there are also

3   some positive reports concerning his behavior.  Plaintiff

4   started in regular classes and is still considered to be on

5   track for a regents diploma.

6            Plaintiff was psychiatrically examined by Dr. Jeanne

7   Shapiro on July 14, 2016, at a time when he was entering fourth

8   grade.  The report of Dr. Shapiro is at pages 286 to 289 of the

9   Administrative Transcript.  Dr. Shapiro did not make any

10  psychiatric diagnosis, but did note that intellectual disability

11  should be ruled out.

12           In terms of activities of daily living, plaintiff's

13  son is able to groom and dress himself, although his mother

14  testified that he does not do particularly well in matching

15  clothes.  My wife says I don't, either.  He socializes with

16  friends and family.  He swims, plays outside, rides his bicycle,

17  and plays video games and particularly likes a racing video

18  game, according to his mother.

19           Procedurally, plaintiff applied for Supplemental

20  Security Income Title XVI benefits on behalf of her son on

21  May 20, 2016, claiming disability based on her son's learning

22  disability, anger, and frustration at times, and aggressive

23  behaviors at school.  That's noted at page 145 of the

24  Administrative Transcript.

25           A hearing was conducted on July 24, 2018, by

SHAQUANA H., O/B/O D.H., JR. v. SOCIAL SECURITY          4

1    Administrative Law Judge Elizabeth Koennecke.  ALJ Koennecke

2    issued an unfavorable decision on September 18, 2018.  That

3    became a final determination of the agency on July 10, 2019,

4    when the Social Security Administration Appeals Council denied

5    plaintiff's request for a review.  This action was commenced on

6    September 11, 2019, and is timely.

7              In her decision, ALJ Koennecke applied the familiar

8    three-step sequential test for determining childhood disability.

9    At step one, she concluded that plaintiff's son had not engaged

10   in substantial gainful activity during the relevant times.

11             At step two, she concluded that the plaintiff's son

12   does suffer from severe impairments, including communication

13   impairment and learning disability as falling within the

14   category of 20 C.F.R. Section 416.924(c).

15             At step three, ALJ Koennecke first concluded that

16   plaintiff's impairments do not meet or medically equal in

17   severity any of the listed presumptively disabling conditions

18   set forth in the Commissioner's regulations.  She then went on

19   to determine whether the plaintiff's impairments were

20   functionally equivalent to any of the listed impairments and

21   found that there were not extreme or -- actually, one extreme or

22   two marked limitations in those domains and, therefore,

23   concluded that plaintiff was not disabled at the relevant times.

24             As the Commissioner has noted, the Court's role is to

25   determine whether correct legal principles were applied and

1   substantial evidence supports the resulting determination.  The

2   Second Circuit has noted, including in *Brault v. Social Security*

3   *Administration*, 683 F.3d 443 from June of 2012, that this is a

4   demanding standard.  It is, perhaps, even more exacting than the

5   clearly erroneous standard.  The Circuit noted in that case that

6   under the substantial evidence standard, once an ALJ finds a

7   fact, that fact can be rejected only if a reasonable factfinder

8   would have to conclude otherwise.

9          The plaintiff in this case contends that the

10  Administrative Law Judge's determination is erroneous and,

11  specifically, that she erred in not finding at least marked

12  limitations in two of the domain areas, attending and completing

13  tasks, and caring for yourself.  The framework under which this

14  case is analyzed comes from the 1996 enactment of the Personal

15  Responsibility and Work Opportunity Reconciliation Act of 1996,

16  which took effect on August 22, 1996.  Under that act, an

17  individual under the age of 18 is disabled and thus eligible for

18  SSI benefits if he has a medically determinable physical and

19  mental impairment which results in marked and severe functional

20  limitations and which can be expected to result in death, or

21  which has lasted or can be expected to last for a continuous

22  period of not less than 12 months, 42, United States Code,

23  Section 1383(c), subsection (A)(3)(C)(i).

24         By regulation, the agency has prescribed a three-step

25  evaluative process, as Judge Koennecke noted, to be employed in

 1   determining whether a child can meet the statutory definition of

 2   the disability, 20 C.F.R. Section 416.924.  The first step which

 3   bears some similarity to the familiar five-step analysis

 4   employed in adult disability cases requires a determination of

 5   whether the child has engaged in substantial gainful activity.

 6   If not, then the test requires a determination of whether the

 7   child suffers from one or more medically determinable

 8   impairments that either singly, or in combination, are properly

 9   regarded as severe in that they cause more than a minimal

10   functional limitation.  If the existence of a severe impairment

11   is discerned, the agency must then determine whether it meets or

12   equals a presumptively disabling condition identified in the

13   listing of impairments set forth in 24 C.F.R. Part 404, subpart

14   P, appendix 1.  In making that determination, equivalence to a

15   listing can be either medical or functional.

16            Under final regulations which became effective on

17   January 2, 2001, analysis of functionality is informed by

18   consideration of how a claimant functions in six main areas

19   denominated as domains.  It is specified in 20 C.F.R. Section

20   416.926(a).  The domains are described as broad areas of

21   functioning intended to capture all of what a child can or

22   cannot do, and include:  One, acquiring and using information;

23   two, attending and completing tasks; three, interacting and

24   relating with others; four, moving about and manipulating

25   objects; five, caring for oneself; and six, health and physical

```
 1   wellbeing.

 2           Functional equivalence is established in the event of

 3   a finding of one extreme limitation, meaning more than marked,

 4   in a single domain.  An extreme limitation is an impairment

 5   which interferes very seriously with the claimant's ability to

 6   independently initiate, sustain, or complete activities.  That

 7   definition is found in 20 C.F.R. Section 416.926(a), subdivision

 8   (E)(3)(i).  Alternatively, a finding of disability is warranted

 9   if a marked limitation is found in any of two of the listed

10   domains.  A marked limitation exists when an impairment

11   interferes seriously with the claimant's ability to

12   independently initiate, sustain, or complete activities.

13           A marked limitation may arise from several activities

14   or functions that are impaired or even when only one is

15   impaired, as long as the degree of limitation is such as to

16   interfere seriously with the ability to function based on age

17   appropriate expectations, independently, appropriately,

18   effectively, and on a sustained basis.  That's found at 20

19   C.F.R. part 404, subpart P, appendix 1, Section 112.00(c).

20           In this case, as plaintiff's counsel has noted, when

21   making this analysis, SSR 09-1p makes it clear that the whole

22   child must be examined.  That Social Security ruling provides as

23   follows:  We always evaluate the whole child when we make a

24   finding regarding functional equivalence unless we can make a

25   fully favorable determination or decision without having to do
```

1   so.  The functional equivalence rules require us to begin by

2   considering how the child functions every day and in all

3   settings compared to other children the same age who do not have

4   impairments.

5            The ruling goes on to state, you must consider the

6   following questions:  One, how does the child function?

7   Functioning refers to a child's activities, that is everything a

8   child does throughout the day at home, at school, and in the

9   community such as getting dressed for school, cooperating with

10   caregivers, playing with friends, and doing class assignments.

11   We consider:  What activities the child is able to perform, what

12   activities the child is not able to perform, which of the

13   child's activities are limited or restricted, where the child

14   has difficulty with activities at home, in child care, at

15   school, or in the community, whether the child has difficulty

16   independently initiating, sustaining, or completing activities,

17   the kind of help and how much help the child needs to do

18   activities and how often the child needs it; and three, whether

19   the child needs a structured or supportive setting, the type of

20   structure or support a child needs, and how often the child

21   needs it.

22            The first of the two domains at issue in this case is

23   attending and completing tasks.  The Administrative Law Judge

24   addressed this domain in page -- pages 21 and 22 of the

25   Administrative Transcript.  That domain is addressed in Social

SHAQUANA H., O/B/O D.H., JR. v. SOCIAL SECURITY                    9

 1    Security Ruling 09-4p.  The ruling provides as follows in

 2    connection with that domain:  In the domain of attending and

 3    completing tasks, we consider a child's ability to focus and

 4    maintain attention and to begin, carry through, and finish

 5    activities or tasks.  We consider the child's ability to

 6    initiate and maintain attention, including the child's alertness

 7    and ability to focus on an activity or task despite distractions

 8    and to perform tasks in an appropriate pace.  We also consider

 9    the child's ability to change focus after completing a task and

10    to avoid impulsive thinking and acting.  Finally, we evaluate

11    the child's ability to organize, plan ahead, prioritize

12    completing tasks, and manage time.  Further on it states, the

13    domain of attending and completing tasks covers only the mental

14    aspects of task completion, such as the mental pace that a child

15    can maintain to complete a task.

16            The ruling goes on to give examples depending upon

17    the age of the claimant's child involved.  When it comes to a

18    child -- school aged children, which plaintiff's son qualifies

19    as, the following examples are given:  Focuses attention in a

20    variety of situations in order to follow directions; complete

21    school assignments and remembers and organizes school-related

22    materials -- and these are examples of things that students

23    should be able to do -- concentrates on details and avoids

24    making careless mistakes; changes activities or routines without

25    districting self or others; sustains attention well enough to

1   participate in group sports; read alone; and complete family

2   chores; completes a transition task without extra reminders or

3   supervision, for example, changing clothes after the gym or

4   going to another classroom at the end of a lesson.

5          In this case, the finding of the Administrative Law

6   Judge that plaintiff's son has less than marked limitation in

7   this domain is supported by several pieces of evidence.  First

8   is Dr. Shapiro's medical source statement.  The statement at

9   page 288 indicates that plaintiff's son appears to have no

10  limitations in performing simple tasks.  He has -- appears to

11  have moderate limitations performing age appropriate complex

12  tasks.  He appears to have no limitations maintaining attention

13  and concentration for tasks.  He appears to have no limitation

14  regarding his ability to learn new tasks.  He appears to have

15  mild limitations regarding his ability to make age appropriate

16  decisions.

17         The finding in this domain is also supported by the

18  conclusions of an agency consultant, Dr. Lieber-Diaz, rendered

19  on August 31, 2016, and found at pages 61 through 70 of the

20  Administrative Transcript.  At page 66, Dr. Lieber-Diaz

21  concludes that there's a less than marked limitation in this

22  area and at the time he had access to Dr. Shapiro's report, as

23  well as school district records, and -- although there is no

24  indication of precisely what those records are.  The -- and

25  clearly, they did not include Mr. Kerwin's report which came

1  later.

2         Mr. Kerwin -- Mr. Kerwin's report also supports the

3  finding in this domain.  At page 241, there are listed 13

4  categories and Mr. Kerwin finds only a serious problem in two

5  categories, that would be focusing long enough to finish

6  assigned activity or task and working at reasonable

7  pace/finishing on time; and a very serious problem in one, that

8  being working without distracting self or others.  It is true,

9  as plaintiff points out, that at page 242 Mr. Kerwin notes that

10 the plaintiff's son needs a high level of support during

11 activities and tends to be disruptive and distract peers if he's

12 unsure how to do a task and that he needs to be in close

13 proximity to the teacher.

14        The IEPs also appear to support this finding.  At

15 page 220, for example, the following is noted:  Denzel -- and

16 this is an IEP from June of 2008.  Denzel is highly engaged

17 during his interactive math lessons on the computer.  Denzel

18 always -- Denzel enjoys participating in kinesthetic activity

19 both inside and outside of the classroom.  He's demonstrated an

20 interest for building structures with a variety of objects such

21 as Legos.  The claimant's son has exhibited positive emotions

22 when he learns a new skill or answers a question correctly in

23 front of his peers.  He has shown a high level of interest in

24 coding in which he excels for his age.

25        In social development, it is noted that the

SHAQUANA H., O/B/O D.H., JR. v. SOCIAL SECURITY        12

1   claimant's son has shown the ability to form positive

2   friendships with peers and interact appropriately with adults.

3   He is a student well liked by his peers and adults in the

4   building.  He will set-up board games with his peers and has

5   shown the ability to interact with friends appropriately.

6           In physical development, it was noted that he enjoys

7   participating in kinesthetic activities.  Physical education is

8   his favorite special in school.  He holds a high level of

9   engagement during hands-on activities in the classroom, he

10  shows, I'm sorry -- and he shows an interest in building

11  structures with a variety of materials.

12          And on page 221, and perhaps this is more appropriate

13  in the domain of caring for oneself, it's indicated that the

14  student does not need a behavioral intervention plan.

15          The -- there's also support from the mother's

16  testimony concerning what he is capable of doing, his enjoyment

17  of video games, including racing video games.  The domain -- so

18  I find that there's substantial evidence to support the

19  conclusion regarding attending and completing tasks.

20          I think it's a closer call with regard to caring for

21  yourself.  The Administrative Law Judge at page 23 and 24

22  addressed this domain and concluded that plaintiff has a less

23  than marked limitation in this area.  The report of teacher

24  Kerwin, the fifth grade teacher, of the ten categories broken

25  out on page 244 finds a serious problem in three and -- I'm

1  sorry, in two and a very serious problem in three, including

2  handling frustration appropriately, identifying and

3  appropriately asserting emotional needs, and using appropriate

4  coping skills to meet daily demands of a school environment.

5  The -- I think the discussion on page 24 of why there was a

6  finding of less than marked could have been more robust, but,

7  again, it appears to be supported.

8           In this area, SSR 09-7p specifies that this domain

9  considers a child's ability to maintain a healthy emotional and

10 physical state and includes how well children get their

11 emotional and physical wants and needs met in appropriate ways,

12 how children cope with stress and changes in environment, and

13 how well children take care of their own health, possessions,

14 and living area.  Examples of what a school aged child should do

15 in this area includes recognizes circumstances that lead to

16 feeling good and bad about himself, begins to develop

17 understanding of what is right and wrong and what is acceptable

18 and unacceptable behavior, demonstrates consistent control over

19 behavior and avoids behaviors that are unsafe, begins to

20 intimate more of the behavior of adults she knows -- he knows,

21 performs most daily activities independently, for example,

22 dressing and bathing, but may need to be reminded.  The mother's

23 testimony on that last point indicates that although the

24 plaintiff's son is perhaps not the best at matching clothes, he

25 is able to dress himself and groom.

1    The -- as I indicated before, the IEP from 2018

2  indicates that no behavioral plan is needed.  When it comes to

3  stress, Dr. Shapiro noted at page 288 that there is no

4  limitation with regard to stress -- I'm searching for the

5  precise language.  Ah, the last sentence.  There appear to be no

6  limitations regarding his ability to deal with stress, that's at

7  page 288.

8    The -- Mr. Kerwin's report is somewhat troubling, and

9  I acknowledge that plaintiff has cited a case, *Wells v.*

10  *Berryhill* from the Western District of New York.  It's found at

11  2018 WL 3454687.  It is from Senior District Judge David G.

12  Larimer on July 18, 2018, that arguably would support a vacating

13  of the Commissioner's determination and a remand, but the focus

14  really is not on how I would have -- the Court would have

15  interpreted Mr. Kerwin's report and others and what finding I

16  would have made, but rather whether I can say that the

17  Administrative Law Judge's finding is supported by substantial

18  evidence.  There is considerable evidence that does support the

19  conclusion in this domain and, clearly, the evidence is

20  equivocal.

21    I do note that Mr. Kerwin points out in this domain

22  that the plaintiff's son was extremely well behaved from

23  September 2017 to January 2018, that's at page 245 of the

24  Administrative Transcript, and that he apparently started acting

25  out and disrespecting his peers and teachers in February.  As

1    the Administrative Law Judge correctly pointed out, there's no

2    indication from that entry that the situation that began in

3    February of 2018 lasted or could be expected to last for

4    12 months as required under the statute and regulation.

5            The focus, really, is on -- and I also note at page

6    67, of course, Dr. Lieber-Diaz, who's an expert in the area of

7    Social Security, based on his review of available materials,

8    concluded there was less than marked limitation in this area.

9            The focus under *Brault*, really, is whether these two

10   findings of fact are such that a reasonable factfinder reviewing

11   this record would have to conclude that there was a marked or

12   better -- higher limitation in these two areas, and we are not

13   able to say that, another Court might disagree, as Judge Larimer

14   might under these circumstances, but applying the deferential

15   standard that controls, I conclude that the determination was

16   supported by substantial evidence and correct legal principles

17   were applied.  I'll, therefore, grant judgment on the pleadings

18   to the defendant and order dismissal of plaintiff's complaint.

19           Thank you both for excellent presentations.  Stay

20   safe.

21           MS. PALMER:  Thanks, your Honor.  You, too.

22           MR. RAPPAPORT:  Thank you, your Honor.

23           (Time noted:  1:51 p.m.)

24

25

CERTIFICATE OF OFFICIAL REPORTER


        I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

        Dated this 10th day of November, 2020.


    x *Hannah F. Cavanaugh*
        HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
        Official U.S. Court Reporter